Dear Mr. Cremaldi:
This office is in receipt of your opinion request, wherein you ask the following three questions, restated as follows:
 1. Is the organization known as the Knights of the White Kamellia Klu Klux Klan entitled to the exemption allowed regarding the restrictions on the wearing of masks and hoods contained in LSA-R.S. 14:313?
 2. Has LSA-R.S. 14:313 ever been declared unconstitutional to any extent by any court and, if so, to what extent? and
 3. If LSA-R.S. 14:313 has never been declared unconstitutional to any extent by any court, does your office consider it to be constitutionally valid and enforceable?
In order to respond to all your questions, we first quote LSA-R.S. 14:313, providing:
 § 303. Masks or hoods, wearing in public places prohibited; penalty; exceptions; permit to conduct Mardi Gras festivities, how obtained.
 No person shall use or wear in any public place of any character whatsoever, or in any open place in view thereof, a hood or mask, or anything in the nature of either, or any facial disguise of any kind or description, calculated to conceal or hide the identity of the person or to prevent his being readily recognized.
 Whoever violates this Section shall be imprisoned for not less than six months nor more than three years.
This Section shall not apply:
 (1) To activities of children on Halloween, to persons participating in any public parade or exhibition of an educational, religious, or historical character given by any school, church, or public governing authority, or to persons in any private residence, club, or lodge room; or,
 (2) To persons participating in masquerade balls or entertainments, to persons participating in carnival parades or exhibitions during the period of Mardi Gras festivities, to persons participating in parades or exhibitions of minstrel troupes, circuses, or other dramatic or amusement shows, or to promiscuous masking on Mardi Gras which are duly authorized by the governing authorities of the municipality in which they are held or by the sheriff of the parish if held outside of an incorporated municipality.
 All persons having charge or control of any of the festivities set forth in paragraph (2) of this Section shall, in order to bring the persons participating therein within the exceptions contained in paragraph (2), make written application for and shall obtain in advance of the festivities from the mayor of the city, town, or village in which the festivities are to be held, or when the festivities are to be held outside of an incorporated city, town, or village, from the sheriff of the parish, a written permit to conduct the festivities. A general public proclamation by the mayor or sheriff authorizing the festivities shall be equivalent to an application and permit.
In response to your first question, it is the opinion of this office that the exemption allowed persons participating in a religious exhibition is not applicable to the Ku Klux Klan. We relay in part upon the following language from the dissent in the case of State v. Dunn, 109 So. 56 (La. 1926):
 But I do not consider it quite right to compare membership, or citizenship, as I believe it is called, in the so-called Invisible Empire, Knights of the Ku Klux Klan, with membership in the generally considered worthy fraternities, like the Masons, the Knights of Columbus, Knights of Pythias, Oddfellows, Elks, Druids, Woodmen of the World, etc. The members of those organizations do not conceal their identity. They are proud to display it. The members or citizens of the Invisible Empire, Knights of the Ku Klux Klan, on the other hand, were so disposed to conceal their identity as members of the organization, to such an advantage over nonmembers, that the legislature of this state deemed it necessary, at its last session, to enact three penal laws to compel them to make known their identity and leave off the hood and mask. I refer, of course to the Act 2 of 1924, requiring the head officer of every such organization to file with the secretary of state a list of the names and addresses of the members of the organization, and making it an offense, punishable by imprisonment, for any such head officer to fail to comply with the statute; and the Act 3 of the same session, making it a misdemeanor for anyone to wear a hood or mask, or other facial disguise calculated to conceal his identity, in any public street or highway or other public place; and the Act 4 of the same session, making it a felony for anyone to wear a disguise in the commission of certain acts which would be otherwise only misdemeanors. Which three statutes, as we know, were enacted in fulfillment of a pre-election pledge made by the candidates for Governor in the last campaign, in response to a popular sentiment against the secret activities of members of the Ku Klux Klan. (Emphasis added).
Act 3 of the 1924 Regular Legislative Session is the source of enactment of LSA-R.S. 14:313.
In response to your second question, we are unaware of any jurisprudence declaring LSA-R.S. 14:313 to be unconstitutional.
In response to your third and final question, this office is charged with the responsibility of defending the constitutionality of all state law when challenged. All statutory enactments are presumed to be constitutional. Interstate OilPipe Line Co. vs. Guilbeau, 217 La. 160, 46 So.2d 113
(1950). We presume LSA-R.S. 14:313 to be constitutional, absent jurisprudence to the contrary.
Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL